United States Court
District of maryland
At Baltimore

Trevon R. Beasley
        petitioner,

            v.

United States of America
        Respondent,

Crim. No

FILED _____ ENTERED
LODGED _____ RECEIVED

AUG 2 0 2021

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

Petitioner's Memorandum of fact and
law in Support of motion to Vacate, Set aside
or correct his conviction and Sentence pursuant
To 28. U.S.C. § 2255

Now comes the petitioner, Trevon R. Beasley,
pro se and pursuant to 28 U.S.C § 2255, The
rules governing §2255 proceedings, Federal rules
of Civil and Criminal procedural, the below
Cited legal authority and any and all other
applicable legal authority, hereby offers his
memorandum of fact and law in Support of
his motion to vacate, Set aside and or correct
Conviction and Sentence under 28 U.S.C. §2255
and would State and argue as follows.

## Procedural History

On november 30, 2018 after a Jury trial, Trevon Beasley was convicted of count one, Conspiracy to particpate in a racketeering activity, Count two, conspiracy to distribute a controlled dangerous Substance, Count Eight, Conspiracy to use and carry a firearm during in relation to a crime of violence or drug trafficking Crime, Counts nine, Eleven, twelve, thirteen, fourteen, ~~word~~ and filthteen, Count ~~twenty~~ Twenty possession of a controlled dangerous Substance

On march 29, 2019, The court Sentenced Beasley to a term of life count one, count two life, and twenty years on all remaining Counts.

The fouth circuit affirmed, See USA v. Beasley, No. 19-4241 (4th cir. 2020)

The instant motion to vacate Sentence pursuant to 28 U.S.C § 2255 and memorandum of fact and law now follow.

legal Standard,

In Strickland v. Washington, 466 U.S. 668 (1984) the Supreme court of the United States Set fourth a legal Standard for Criminal defense attorneys in their representation of defendants who have been accused of Crime, and who are being prosecuted by either State or federal goverment. The Court also Set forth the Standard for determining when a Criminal defense attorney has provided Constitutionally inadequate representation.

More Specifically, in Strickland the Supreme court established a Set of legal principles that govern Claims of ineffective assistance of defense Counsel in Criminal proceedings.

An ineffective assistance Claims has two Components: A petitioner must Show that Counsels performance was deficient, and that the deficiency prejudiced the defense. Id, at 687. To establish deficient performance, a petitioner must demostrate that Counsels representation fell below an obJective Standard of

reasonableness under prevailing professional norms. Id. at 688, while a court, in determining an ineffective assistance of counsel claim, must give deference owed such "strategic judgments" the supreme court defined the deference owed such strategic judgments in term of the adequacy of the investigation supporting those judgments:

[S]trategic choices made after thorough investigation of law and fact relevant to plausible options are virtually unchallengable; and strategic choices made after less then complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. Id. at 690-91.

In other words cousel has a duty to make reasonable investigations or to make reasonable decisions that make particular investigations unnecessary. A particular decision not to investigate must be directly assessed for reasonableness in all circumstances

Second, in order for counsel's inadequate performance to constitute a Sixth Amendment

Violation, a petitioner must show that counsels failures prejudice his defense. Id., at 692. Under the prejudice prong a petitioner must show that there is a reasonable probability that but for counsels unprofessional error's the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id., at 694.

In the instant case, petitioner asserts that his trial counsel provided constitutionally " ineffective assistance when he merely accepted the goverment's case as fact, and entirely failed to conduct any independant investigation into the facts evidence and law of the case. As a result of ~~counsels~~ counsels flawed reprensentation, and as set forth in the grounds below, petitioner was deprived of challenging the challengable evidence of drug activity, which includes possession, distributions, types and quantiys presented by the goverment at trial. petitioner was prejudiced by counsels failure.

In Beasley v. United States, 491 F.2d 687 (6th Cir 1974) the court held that the defendant did not receive the effective assistance of counsel before or during the trial because his attorney did not expote potentially exonerating defense, or develope them at trial, Thus the conviction could not Stand,

Ineffective Assistance of Counsel Trial counsel
failed to challenge goverments drug Activity
on behalf of petitioner"

(ground 1)

Trial Counsel Performance fell below a Standard of
reasonableness when he advised petitioner to Stipulate
the drug activity in the presence of the Jury to obtain
an acceptance of responsibility from the district court,
But in doing So this allowed the goverment to unlawfully
Combine weights from multiple distributions and
discontinuous possessions during the indictment
Period.

The Evidence was insufficient to allow a rational
Juror to find beyond a reasonable doubt that
defendant possessed atleast 1,000 grams of heroin
or actually 280 grams of crack-base with intent to
distribute or actually distributed Said amount
Which in turned triggered the Statutory minimum
that was used in violation of petitioners rights
thus increasing his Sentence.

Because the Jury was instructed to determine the
drug type and Quanity. In Counsels deficient performace
petitioner was denied his right of the 6th amendment
Which guarantees that a counsel prepares proper and
forseeable defense through investigation.

Through counsels incompetence Conceding the goverment
case as fact by not challenging the drug activity,

P.g 1

Which includeds type, quantity, distributions and
possessions this futher violated petitioners Constitutional
right under, ~~anananang~~ the 6th amendment which
guarantees every criminal defendant "the right to
the effective assistance of counsel" Strickland v. Washington,
466 U.S 668, 680, 104 S.ct 2052, 80 L. Ed 2d 674 (1984).


Judging the ~~reson~~ reasonableness of counsels Challenged
Conduct on the facts of the particular case viewed
as of the time of counsels conduct a covicted defendant
Making a Claim of ineffective assistance of counsel
must Identify the act or omission. The record will
reflect counsels actions during trial.
Testimony from Trial counsel and the honorable Judge
of the court reflects that the court was aware of
counsels actions of not challenging the goverment case
pertaining to the drug activity.
"See Sentencing transcript pg 4"
- The Court - "I believe that even during the course of
the trial it was conceded that the defendant engaged
in narcotic activity is that correct".
- Trial counsel - "yes, Your honor in fact I'd argue that there
Should be Some acceptance of responsibility credited
Even under the guidelines for those admissions".
See also Sentencing transcript pg 16
- The Court - "group five is the Conspiracy to distribute and
possess with the intent to distribute Controlled Substance
that was not really contested during the course of this

P.g. 2

Trial"

- <u>See also Racketeering Conspiracy Claim</u> —
The Court made enhancements for firearms that was
also not contested that alledgelly tied in with Crimes
of violence alledge in count one and drug trafficking crimes.
- <u>See Sentencing transcript p.g 19</u> —
- Trial counsel — "We never contested any when it comes to the
tattooing, his activity in the neighborhood in terms of
the large amount of drug dealing, your honor we accepted
responsibility for all of that we admitted that just like
everybody else in this Case who has <u>pleaded guilty</u>."

Counsel's Stratergy would be more appropiate for a plea
agreement as petitioners Co-defendants Agreeded to do
this tactic was not Sound Stratergy for trial. To
concede guilty in the presence of the Jury petitioner
was denied his 5th and 6th amendment rights.

Counsel trial represensentation was unreliable and unreasonable
under prevailing professional norms and the challenged actions
was not Sound Stratergy. "Kimmelman 477 u.s at 381."

- <u>See Jury instructions; #17</u> —
The law only requires a Substantial Similarity between the indictment
and proof that is Sufficent, thus if the Superseding indictment
charges that a certian amount was involved and the
testimony or exhibits indicate in fact a different amount
was involved it is for you to determine Wheter the differenee
is material and if you find it was material then you must find the

defendant not guilty".

Had counsel challenged the governments narcotics activity with proper defense and challenged the quantity alleged through exhibits or testimony to show a different amount theres a reasonable proability that the outcome would have been different.

- See also Jury instruction #4 -

"The Jury determines the facts."

For counsel to look past the Jury who would determine the case and forefit a proper defense for a sentencing arguement of acceptence of responsibility. This was an act of incomptence, petitioner was not guaranteed to recieve which violated petitioner rights under the 6th amendment to effective assistance of counsel and his 5th amendment right to due process.

Because narcotic activity were alleded in counts. 1, 2, 8, 9, 10, 11, 12, 13, 14, 15, 20. Which the Jury found petitioner guilty on all counts. Counsel was ineffective and unreliable for not challenging governments case that was not supported by facts and law.


"Under 21 U.S.C.§ 841(b)(1)(A)(i), a violation involving 1,000 grams or more of heroin requires a mandatory minimum penalty of 10 years Imprisonment and sets a maximum penalty of life Imprisonment.

Under 841(b)(1)(b)(i) a violation of 841(a) involving 100 grams or more of heroin requires a mandatory minimum penalty of 5 years Imprisonment and sets a maximum

P.g 4

Penalty of 40 years Imprisonment."

Because the weight involved in a violation of 841(a) increases the Statutory penalty it is an element of the offense that must be proven beyond a reasonable **doubt.**

"Under 21 U.S.C.§ 802(11) distribution occurs when a controlled Substance is delivered. Delivery is the actual, constructive, or attempted transfer of a controlled Substance 21 U.S.C.§ 802(8). The plain language of 21 U.S.C.S 841(a) indicates that each unlawful tranfer is a distinct offense. Seperate acts of distribution of controlled Substance are distinct offense under 841(a) as opposed to a continuing crime".

"possession with intent to distribute is actual or constructive possession over a controlled Substance by a defendant who has in mind or plans in Some way to deliver or transfer possession or control of the Controlled Substance to another." Constructive possession requires the power and the intention at a given time to exercise dominion or control over a thing. proof that a defendant associated with a person who controls a drug is insufficient to prove Constructive possession".

"possession of 1,000 grams of heroin begins when a defendant has the power and intentions to exercise dominion and control over all 1,000 grams and ends when his possession is interrupted by a complete disposession or by a reduction of that quantity to less than 1,000.

The government alledged 1,000 grams or more of heroin and 280 grams of crack-base as part of the Conspiracy. The Jury was asked to determine the type and quantity

that were forseeable to the petitioner, How the Jury determined
that the petitioner was attribute to one kilogram or more
of heroin and 280 grams of crack base is unknown.

Because the goverments alledged amount triggers a increased
mandatory minimum this is a element that the goverment must
prove beyond a reasonable doubt.
United States V. Athony rowe, 919 F.3d 752 (2019) Quoting
United States V. Allen ryan Alleyne, 570 U.S. 99 133 S.ct 2151;
186 L.Ed 2d, 314 (2013)
In rowe the goverment alledged rowe distributed 1,000 grams
of heroin. The Court found it was Insufficent Evidence to
allow a rational Juror to find the defendant possessed
atleast 1,000 grams of heroin at a single time with the intent
to distribute. Because the goverment Evidence was premised
on its incorrect belief that it could combine weights from
multiple distributions and discontinued possessions during the
indictment period. The goverment can not combine 10
transactions of 28 grams of crack-base to equal 280 grams
and increase a mandatory minimum as they illegally did
here in petitioners case due to Counsels failure to
uncover and present mitigating Evidence attributed to petitioner.
AS in rowe the goverment would not be able to present Evidence
that will prove at one time the petitioner possessed, distributed or
was forseeable to the weight Of 1,000 grams or more of heroin
or 280 grams of crack-base. A rational Jury Could determine
the petitioner atleast possessed a Eightball Street term
Sor 3.5 grams of crack-base at one time, Counsels

actions releaved the government the burden to prove this element which is required.

This is clearly an act of deficiency by counsel and an error that can never be harmless. It is also a violation of petitioners 5th amendment right to due process. In counsels failure to make this challenge, petitioner was Enhanced to a life Sentence. If the aforemation was challenged but for counsels unprofessional errors theres a reasonable probability that the proceeding would have been different, minus counsels deficient performace and actions falling beneath the expectant norm for a compentant proffessional.

THE District Court abused Its discretion Denying a mistrial After Juror misconduct

## (ground 2)

Petitioner respectfully asserts that his 6th amendment to a fair and Impartial Jury was prejudically Violated. When a Juror of the panel commited misconduct by disregarding courts instruction on how to handle unusal incidents. The court for Case # [GLR-17-223] instructed the Jury daily to notify the court Immediately if to come in Contact with a unusal incident and not to discuss Such matters with fellow Jurors. Juror A violated court instructions, when she came into external ~~contact~~ Contact, Days prior to Nov. 20th 2018, Juror A was followed out of the court house by an unidentified masked, hooded Sweatshirt man. The man stated "I'm going to do a hit tonight" "oh yeah I'm going to get a hit tonight". This frightened the Juror she walked to a Security booth and spoke to the guard and expressed that she was afraid, She waited till the unidentified masked man was Seen getting in a car. Before leaving the Security guard. 🖊

This information and Juror feelings were held for days before the court and parties were made aware of this incident. One instruction Clearly Violated. The next Violation came when Juror A decied to disclose this information to another Juror believed

Pg 1

To be Juror #8 inside the Jury room where she
gave a detailed account of the incident and also
expressed her fears. This misconduct and taintment
did not only violate courts instruction, but also
violated petitioner right to an fair and Impartial
Jury that is guaranteed by the 6th amendment.

Juror did not notify the court instead conveyed
this information in the presence of all Jurors
inside the Jury room an another Juror came
forth with this information.
The trial Judge initally called for Juror A
in question to be brought into the courtroom so
she could describe what transired, she reported
what was stated above. futher questioning she
reported her conversation with Juror #8 in the Jury
room, was only heard by them 2, which was later
found to be flase all except one Juror knew of
the incident either from Juror A directy or over-
heard her conversation with Juror #8. Through
testimony Juror indicated she did not want the
counsels to know about the incident.

p.g2

In a case where petitioner and associates are
alleged to commit acts of violence such as
murder for hire "hits", Tampering and retailiating

aganist witnesses, Informants, and victims by the
use of force and threats to intimadate. The phrase
"hit" was transmitted to the Jury through goverments
presentations, theories and goverment witnesses
testimony which futher more prejudiced the
petitioner by Juror A misconduct.
Juror A act of Conveying this information to
others Jurors in a Jury room where "more then innocuous
interventions" and constituted conduct "of such a
character as to reasonably draw into question"
the ability of the Jurors to remain Impartial.
"Barnes 751 F.3d at 244-245."

The record reflects that is what transpired in this
case because of the Jurors misconduct the court
decieded that a voir dire of all remaining Jurors
was warranted.
The plainly prejudical nature of Juror A allegation
taintment and misconduct the courts response
reflecting it's assesment that the misconduct was
Pig 3       credible for a voir dire this ioga is so that the
allegation fits the criteria for a remmer
hearing to be met. presumption upon a crediable
allegation of Jury tampering. "If the defendant
makes the threshold showing he is Entitled under
remmer (1) to a rebuttable presumption that

the external influence prejudiced the Jurys ability
to remain Impartial and (2) to an Evidentiary
hearing to determine "what actually transpired" and
wheter the challenge contact was harmless.
Remmer 347 U.S 229. Barnes 751 F.3d at
242-44 at Such Evidentiary hearing the goverment
bears the burden of rebutting the presumption of
pre Judice by Showing that theres was "no
reasonable possibility" that the Jury "was influenced
by an Improper Communication".

AS to the threeshold question to aspect of this
must be considered, first there was an extraJudicial
incident which certainly frightened one Juror.
However that Juror A chose to not Immdiately
disclose the incident to the court in clear
contravention of the courts instruction concerning
Outside contact. Instead She spread her fears
among all Jurors except one, by speaking openly
about the incident thereby infecting the entire Jury.

Pg 4

Therefore, the initial theshold is met, extra Judical
information concerning a "hit" was transmitted to
the Jury. There is then a ~~rebiebtle~~ rebuttable
presumption of prejudice that requires a mistrial.

The District courts mangerment of this incident was
flawed both procedually and Substantively. The
district court dismissed Juror A based upon her
misconduct because 1 She failed to notify the
Court of an unusal incident and 2 She
Spread this amongst the entire Jury.
The district court did not fully investigate
the reported allegation thus failed to comply with
the requirements of remmer.
Procedually a court confronted with a credible
allegation of an Improper external contact thereof
upon the Jury and whether it was prejudicial
"In a hearing with all interested parties
permitted to participate" remmer 347 U.S at
229-30., Barnes 751 F.3d at 242. thus the
procedure employed by the district court
disregarded the fact finding purpose of a
remmer hearing which is based on consideration
of due process in barnes "without a hearing a
criminal defendant is deprived of the opportunity
to uncover facts that could prove a Sixth
amendment violation". Id. at 250. This procedure
also deprived the petitioner of the presumption
of prejudice to which he is entitled to under
remmer. Remmer, 347 U.S at 229; Barnes 751
F.3d at 242-43.

Pg 5

The district court lack to fully investigate was substantively deficient also. The court never fully engaged in consideration of Juror A allegation

This is supported the court never called the security guard and took an unduly narrow view of the types of external contacts that would mandate a remner hearing.

Juror A reported that she was allegedly followed out of the court house by an unidentified man wearing a maske and said loud enough for her to hear. Juror A may well believed that she was targeted because she was followed and there may have been an effort afoot to tamper with her through the act of intimadation as the goverment has alleged the petitioner and associates to do.

There are two things that a reasonable Juror could take from what transpired to the Juror that was followed.

First that one of their panel members felt threatened by the incident.

Second, that the unidentified man could be a person associated with the petitioner to tamper with one of the Jurors then all of them were vulnerable. It therefore brought evidence from

Pg b

Outside the courtroom and Improperly brought
that evidence directly into the ~~court~~ Jury room
with the phrase "hit" transmitted to the Jury
and Unidentifed masked man using that same
phrase to a Juror "I am get a hit tonight"
this can be analiced many different ways
petitioner would argue the character of the
encounter, the deliver of the phrase Used
In which was used by an masked man
all prejudice petitioner

This indirect communication could have gave a
Juror a different sight on the phrase used
because of the manner of the encounter
and the presentation giving by the goverment
and goverment witnesses on the criminal conduct
conducted by petitioner, co-conspirators and
associates, with the word "hit" defined to
the Jury as a act of violence.
During voir dire of Juror A defense counsel
asked "have you heard the term of hit" Juror A
replied "not unit this trial".
The court felt that because Juror A felt it
was a security concern and the removeal
of said Juror that it cured the misconduct
which was erred. This incident of misconduct

Pg 7

was sufficent enough to conduct a voir dire of
the remaining Jurors which it should have been sufficent
enough to fully investigate the incident without
a full investigation of the incident, the petitioner
was deprived his right to uncover he has a credible
allegation to warrant a mistrial and the court
to conduct a remmer hearing. The depth and
input shared through the conversation the assumption
added or if there were any at all about who
was the unidentified man and who was he
associated with or the true feelings this external
contact may have influenced was not sorted out.
The court erred by not orally explaining to the ~~deep~~
remaining Jurors the dismissle of Juror A and the
court without a doubt could not assure the Jurors
that this incident was not an attempt to tamper
with a Juror without a full investigation, and should
have called all parties that witnessed the
incident including the security guard.
The taintment the Jurors were exposed to by
a member of the panel about a external
contact one or more Jurors may have felt
intimadated regardless.

Therefore the district court should have
declared a mistrial ~~to~~ to protect petitioners rights.

by not fully investigating the actual exsitence it could be a attempt to tamper with a Juror the district court predudically left Key Substantive matter unresolved, namely whether any one in fact had attempted or threatened to intimidate a Juror the indentiy of the masked man thus, the court failed to take Steps to believe the reported incident in fact had occured by not conducting a full investigation.

In remmer v. united States the Supreme Court established the procedures that district court must follow when there has been a direct or indirect private Communication Contact or tampering with a Juror during trial about the matter pending before the Jury remmer 347 U.S at 229. A defendant Seeking a remmer hearing must present a credible allegation that an unauthorized Contact was made, and that the Contact was Such a character as to reasonablely draw into question the integrity of the trial proceedings Constituting "more than an innocuous intervention" Barnes, 751 F.3d at 242-45.

pg 9

The court has prejudically deprived the petitioner to show cause of a credible allegation by not fully investigating the external contact a Juror encountered and because the incident involved a Juror with the same matter pending in this trial Petitioner was prejudically denied a fair Trial.

The court handleing of this case was erred and petitioner is entitled to a mistrial to conduct a remmer hearing.

pig 10

Ineffective assistance of trial counsel

failed to remove a bias Juror that was

Improperly influenced"

(ground 3)

The court and the parties were made aware of the presence

of a possible bias Juror during voir dire to uncover if

Jurors were aware of the incident where external

Contact occurred with a member of the panel

(See claim 2, The District court Abused discretion denying mistrial

after Juror misconduct)

The court Sorted a voir dire of remaining Jurors was

warranted because of this misconduct. Individual voir

dire testimony revealed Jurors Stated they could

remain fair and Impartial, but in the process of questioning

Juror B on his ability to remain fair and Impartial his

qualifying phrased used was "I think So"

petitioner would argue that Juror B respone proves that

misconduct of Juror A with the external Contact incident

Exposed to all Except one Juror of the panel affected

the decision making of Juror B. Counsel actions to

Keep a possible bias Juror denied petitioner Effective

assistance of counsel and a fair trial with a Impartial

Jury.

("If Even a Single Juror Impartiality is overcome by

Such an external influence the defendant rights to an

Impartial Jury has been Compromised."- United States V.

lawson 677 F.3d 629, 648-49 (4th cir 2012)

Pg 1.  A Defendant Sixth amendment right to trial by an Impartial

Jury is violated if an influence outside the Jury -

deliberative process, a so-called "external influence affects the Jury decision making". Barnes v. Joyner, 751 F.3d 229 240, 4Cir 2014).

"To maintain a claim that a biased Juror prejudice defendant for the purpose of maintaining an ineffective assistance of counsel claim a habeas petitioner must show that the Juror was actually biased against him". See- Hughes v. United States 258 F.3d 453 6th cir 2001)

Defense counsel performace fell below a reasonable Standard, when he did not move to the court to remove a possible bias Juror that was improperly affected by an external contact that influenced his decision making. This is shown from the time Jurors were Selected up until the date of voirdire after the misconduct of Juror-A.

Jurors were asked the Same question that were asked at Jury selection of "can you as a Juror remain fair and Impartial. At the voir dire in question after the misconduct before Jurors were asked can they as Jurors remain fair and Impartial. They were first asked were they aware of the incident allegded by a member of the Jury. JurorB testified he was aware of the incident. Juror B gave a honest clear Uncertain response - qualifying phrase of "I think so". To the question can he as a Juror remain fair and Impartial. Juror B answer came from the root of

Pg 2

true feeling that petitioner would argue he was prejudicially affected by the misconduct of Juror A and trial counsel. JurorA conduct of spreading allegations of a possible attempt to tamper with a Juror outside the court house.

Somewhere between Jury Selection - up until the voir dire after the misconduct of Juror A. Juror B became uncertain to remain fair and Impartial.

Defense counsel objected to the Jurors response the parties approached the bar where counsel explained his objection the court then made the decision to simply re-ask the question. Trial counsel prejudically stiplated to without futher inquirying why Juror B now felt uncertain to be fair and Impartial. Juror B response provided a valid basis for counsel to challenge for cause to strike. This is the time trial counsel should have moved to the court to remove Juror B and replace him with an alternate as the court has exercised discretion to remove and replace Juror A that caused this voir dire because of misconduct.

"Juror Bias - is "a state of mind that leads to the inference that the Juror will not act with Entire Impartiality". United States v. torres, 128 F.3d 38, 43 2ᵈcir 1997.) Determining whether a Juror is biased is difficult, however because the Juror may be unaware of his bias or ~~may be proven by evidence will return~~ may actively conceal it. See. -

Pg 3

Smith v. Phillips, 455 U.S 209, 221-22 102 S.ct 940, 71 L.Ed 2d 78 -(1982.).

Juror bias by Implication is possible it is disfavored and reserved for "extreme Situations" Smith 455, U.S at 222-23 (O'connor J. Concurring) The usual "remedy for allegation of Juror partiality is a hearing in which the defendant has the opportunity to prove actual bias" I.d. at 215 (majority opinion).

Juror B answered he could be fair and Impartial the Second time the question was asked once counsel left the bar. How can Counsel Say "with fair assurance that JurorB was not Improperly influenced without futher inquiring What Caused JurorB uncertainty or that he was not Substantially Swayed by the courts.

Through counsels Incompetence to keep a possible bias Juror without making futher inquiray to JurorB uncertainty of why, or what influenced his decision making. counsel left key matters unresolved that Would ensure petitioner a fair trial by an Impartial Jury. Because the Jury were exposed to misconduct of a Juror which involved Serious allegation of a possible attempt to tamper with a Juror.

The court never informed the Jury that it would or has already Conducted a full investigation into the alledged incident of external Contact with a Juror

Pg 4

and that it was unrelated to give the Jury
assurance it was a mere Coincidence. See-
United States V. Hall, 877 F.3d 800, 805, 07. 8th cir 2017.)
The district court Conducted a remmer hearing when
a Juror thought that a defense witness followed her
home after trial, though the court ultimaley determined
that the incident was a Coincidence.

The Same can not be met here without a hearing
Counsels actions deprived petitioner a fair trial and
reliable effective assistance of counsel.
Counsel was well aware of the preJudical affect of
Juror B response the first time could have upon
petitioners due process Constitutional rights pertaining
to remain fair and Impartial. Counsel obJected
but made no futher asstistance to protect petitioners
right. Which was an act of Incompetence.

Juror B may have concealed his true feelings
believing he answered wrongly the first time but
only giving his honest uncertainty influenced by
misconduct which was not Sorted out by counsel.

Had this voir dire been apart of Jury Selection process
and JuRorB was a potential Juror petitioner
would have used his right to strike Juror B
from the proceedings for using the qualifying
phrase of "I think So" to the question "can you as a

Pg 5

Juror remain fair and Impartial".
Juror B uncertainty was not cured by Simply reasking
the Question. Had counsel futher inquiry Juror B
uncertainty it would be without a doubt that
his Impartiality would not be in question now.
To leave a possible bias Juror on a panel that
would determine the outcome of petitioners liberty
is in no way harmless.
It's fair to argue, The incident of the alleged
external contact that was never investigated
caused a Improper influence on a Juror that
would deliberate the case of petitioner. where
petitioner and co-conspirators, and associates are
alleged to commit murder for hire "hits" and other
violent acts Such as "tampering with witnesses,
victims and Informants" through the use of force
and threats to Intimadate. This is alleged through
goverents presentation, theories, and government witnesses
testimony where the word "hits" is transmitted to
the Jury. Due to Juror A misconduct of Improperly
Informing the Entire Jury of an external contact
her fears of the incident and the unidentified
masked man, her thoughts that She was followed
basically believing she was the target of this
Communcation Juror A influenced misconduct
influenced a Jurors decision making.

Petitioner has Shown the preludical Issue of a

p.g 6

possible bias Juror that was not cured do
to counsels Incompetence and unreliable assistance and
~~were~~ such was of nature and character ~~as~~ to draw
into question the integrity of the verdict.

The Cummalative affect of the district court
to deny a mistrial after misconduct, Trial counsel
Ineffective assistance of counsel and (see prosecutional
misconduct claim") collectively deny petitioner
a fair trial

— See also verdict form —
With Respect to the Jurys finding to count one
Racketeering Conspiracy -, under racketeering activity
the Jury found multiple acts of "tampering with
witnesses, victims and Informants" It is Impossible
to tell ~~that~~ the incident of the external contact
where a Juror believed she was the target of a
possible attempt to tamper with was not one
of the ~~acts.~~ multiple acts.

If the aforemation was challenge but for counsel's
unprofessional errors there's a reasonable probability
the proceeding would have been different, minos
counsels deficient preformace and actions falling
beneath the expectant norm for a compentant
professional.
Based on the claims above petitioner is
Entitled to a new trial.

Pg 7

"Prosecutorial Misconduct"
Cummalative(ly) Prejudiced
Petitioner Denying a Fair Trial"
"ground 4"

The District court failed to correct the blantant
prosecutorial misconduct in the Scope of the
plain error analysis.
Being that in the presence of the Jury on two
Seperate Occassions, the goverment attorney Used
goverment witnesses to point out members of the
audience during the trial proceedings.
- See Jury trial transcript, nov. 13th p.g 64 -

Q... "Do you See oshen Beasley"
A... "yes, I do She is right there"
Q... "Is She the one Smiling"
A... "yes".
- See also Jury trial transcript, Vol 8 p.g 87 -
Q... "who is Jrocc"
A... "Justin davis"
Q... "How do you know who Justin davis is"
A... "I Saw him Sitting in the audience"
Q... "So he was the one that Came into the courtroom
     Earlier in this trial".
A... Yes

p.g 1   Petitioner would argue and assert from this one could
logically deduce that this Could have Swayed and
Impacted the Jury Verdict and the way they Perceived
him. As the goverment position and underlying theory

was one of a violent and dangerous gang. Specifically the "old york money gang", and that these alleged members were in fact there to intimidate and keep tabs on those involved in the proceedings rather it be witnesses or anyone else that may have have an impact on the matter one way or another. (Emphasis added) Even with the pointed out of the alleged gang member in open court, the goverment continously asserted the whom were in court and that supposed gang members were violent, criminals and dangerous individuals whom frequented the court proceedings.

The goverment cant tell the jury onething and not know how prejudice these omissions and actions are to the petitioners constitutional rights 5th and 6th amendment rights specifically.

futher more the fact that a unidentified masked man was not investigated atleast to give the jury the assurance that petitioner or family, friends and supporters were also not involved in this alleged incident with a juror. Even more preJudied the petitioner.

- The Vol. 8 Transcript p.g 87 -

Pig 2    Reference occured on the day that that the court in fact just excused a juror for misconduct the reference being to that of Justin Davis.

It was Evident that the comments on the part of the goverment Were to draw the attention of the Jury to issues that could not be brought directly into their case in chief, Yet they were allowed to do So through a back door Avenue that Showed a connection to others that were uncharged but pointed out by their Witnesses during examination.

Taking these remarks, comments and tactics by the goverment as a whole and were they Sufficiently preJudicial as to deny the petitioner a fair trial a court must consider the following:

1) The degree in which the prosecutors remarks may have had a tendecy to mislead the Jury and preJudice the accussed.

2) whether the remarks were isolated or extensive

3) Absent the remarks the Strength of compentent proof introduced to establish the guilt of the accused.

4) whether the comments were deliberatly placed before the Jury to divert attention to extraneous matters.

Pg. 3

5) whether the prosecutors remarks were invited by Improper Conduct of defense Counsel

and

6) whether Curative inStructions were given to the Jury.

The Facts together Shows the preJudice petitioner recieved during this trial, And becaouse the integerty of this court is in Question petitioner is Entitled to a new trial.

pig 4

"THE District Courts instruction Upon Racketeering Conspiracy Provided by the verdict form was Error" (ground 5)

The district court erred by Submitting to the Jury multiple acts without Specification as it allowed the Jury to Consider invalid Crimes as well as Uncharged Crimes that may not had Constituted a crime at all. without the Type of Racketeering activity Such as a date range, The Target of the crimes, or members of the conspiracy it could not Satisfy petitioner 6th amendment right to prove each essential element of a crime nor allow petitioner in accordance with his 5th amendment right to plead Double Jeopardy in the event there was a Subsequent prosecution Sort.

Futhermore it did not provide protection of the risk that Jurors may not have been Unanimous as to anyone of the crimes charged, or provide basis for approopiate Sentencing,

(See.. Sentencing hearing - Tr.

- The District court- "we can assume" That the Jury combed through the evidence and Sorted it out during the Course of their deliberations and actually made express finding by not checking the box that there was any evidence Supporting the overt act of extortion."

P.g 1   Thus The District courts ~~assum~~ "Speculation" Shows how Such error prejudice petitioner. See also  Error in defining the law that applies to one of multiple theories

"The Impossible to tell concept" IS Distinct from a challenged

Based on sufficent evidence. See also, General verdict
rule in "Chowdhury v. worldtel Bangl, holding Ltd, 746
F.3d 42 (2d cir 2014)" The Second Circuit said:
The Supreme court decades ago announced the so-called
general verdict rule, that a new trial will be required
where theres no way to know that an invalid claim –
was not the sole basis for a verdict 746 F.3d at
(citing and quoting, United N.Y & NJ Sandy hook pilots
Assn v. Halecki, 358 US 613, 619, 79 S.ct 517, 3L Ed
2d 541 (1959) See also United States V. mckinney 954
F.2d 471 7th cir 121 L.Ed 2d 587, 113 S.ct 662 (1992)
In mckinney's trial for conspiracy, The court instructed the
Jury that anyone of four possible overt acts could Justify
a conviction for Conspiracy. One of the instructed acts
was not a proper ground for a conspiracy conviction, Id. at
474-75

The petitioner Conviction is more clear as there were multiple
Improper theories to be considered and without Specification
The District court could not cure the error as it
unconstitutionally did at Sentencing. And Because the
error is one that prejudiced the outcome of the trial
and future proceedings.
Petitioner Conviction on count 1 must be reversed or
alternatively petitioner Sentence on count 1 may not
be increased beyond the Statutory maximum of 20
years as it did not reach Apprendi Standard.

Pg 2.

Apprendi Violation – It is unconstitutional for a legislature

To remove from the Jury the assesment of facts
that increase. The prescribed range of penalties to
which a criminal defendant is exposed. It is clear
that Such facts must be established by proof beyond
a Resonable doubt, 530, U.S at 490 Apprend:.

p.g3

"Petitioner Conviction for 924(o) must be Vacated as the record fails to identify a Valid Predicate".    (ground 6)

Racketeering Conspiracy no longer qualifies as a crime of violence, thus invalidating it's 924 application. Although there is a question that "Drug Trafficking can Sustain a conviction as a valid predicate?" Because the Jury was given valid and invalid basis to the Jury it is "Impossible to tell" If the Jury relied on a valid basis, Thus creating uncertainty among the record. It is Settled that ambiguity Upon the record Should rest in defendants favor.

petitioner was Charged with multiple acts of violence including murder Some in which the manner, post davis, Cannot be Sustained as a crime of violence.

Thus, The court cannot Say with absolute Certainty that the evaluation of the crimes based in Count 1 did not prejudice the Jury determination in rendering the verdict on the firearm Count.

Therefore Petitioner Conviction for 924(o) must be reversed.


Authorities in Support
United States v. Davis 139 S.Ct 2319, 204 L.Ed. 2d 757(2019)
United States v. Cree (2021)
United States v. Dimaya v. Sessions 138 S.Ct, 1204, 200 L.Ed 2d 594(2018)
United States v. Johnson
United States v. Rodriguez, 2020 U.S dist. Lexis 66715, 94Cr.313
United States V.

"The District court erred In denying motion
To Suppress Evidence in an Illegal Search and Seizure
of 2 cars?"        (ground 7)

Petitioner asserts and the record reflects, The District
court relied on Constitutional violations and incosistant
findings to deny said motion Before them.

THE District court relied on officers hunch that occupants
of a legally parked Sliver acura Sudden movement
peculiar without Some Stronger indication of Criminal
activity. The articulated facts collectively could not
have Supplied the officers with the appropriate amount
of Suspicion necessary for a Seizure. officers
Showed a Show of authority by Using their
Vehicle to block the Sliver acura from leaving
Is constituted as a Seizure. officers then exited
there Vehicle and Surround the Vehicle, Officers knocked
On the window to Speak to the occupants of the
Vehicle, an got no answer in the process of knocking
Another officer opened the door and ordered petitioner
and Avery Hawkins out of the Vehicle. officers
used probable caused of the Smell of mar
and because the front passenger Avenry Hawkins
was Moving around and officers could not See
him clearly officers opened the door and order
occupants out of the vehicle which next led
to officers finding a handgun under the front
passenger Seat. petitioner was afrested, with Avery
Hawkins and oshen beasley. The Second Vehicle come

Pg 1

In to this arrest as petitioner was being loaded
into a police wagan to be transfered to central
bookings, police officers conduct a search of
person of petitioner which was found a key Fob
police officer hit the unlock button which unlocked
a gray Acura, officers asked "is there Any more
drugs ;contraband or guns in that vehicle" petitioner
responded "I dont know, It's not my vehicle".
officers called a k-9 dog that Alerted on the
gray Acura which resulted in narcotics being
recovered. officers Arrested petitioner sister. from
the initial stop she has been requesting her keys
to the gray Acura.

The facts of the case, police officers mere hunch
were not supported An The Arrest of petitioner
should be dimissed an fruits of a posionous
Tree should be suppressed.

Testimony from Two Arresting officers of the
Events that led to the Arrest of petitioner
Avery Hawkins, and oshen beasley.

P.g 2    ~ officer Hemmerly - Direct
Q... An officer hemmerly, who were you with at the time you made
this Arrest
A... I was with Sergeant Abdi, Fusca and Foster

Q... "An what time of day was it"
A... "It was night time. I believe it was approximately like 0100 hours.

The Arresting Officers Are Set, An the time is 1:00 am on July 29, 2015

Q... where were you in the car
A... I was in the front passenger's Seat
 -next-
Q... IS this Street well lit
A... It's a fairly dark Street at nighttime
Q... Are there Any Street lights on it
A... no, Sir
— next officer hemmerly, explaines his hunch to
approuch the Vehicle —
Q... So you were driving by the Vehicle
A... Yes Sir
Q... And what, If any thing did You notice inside the
Vehicle When you drove by.
A... I observed the front passenger, their Seat
reclined and they ducked down and I observed
the rear passenger ducked down as well into the
back Seat.
Q... And what Significance did you draw from this
Activity
A... Based off my Knowledge of this Area with the violent
Crimes and the CdS Activity, You Know, it Seemed Suspicious

P.g 3

that Someone would duck down as our vehicle passed, our marked patrol vehicle, So you know we wanted to get out and you know investigate why Someone would duck down because of presence.

Q... An You believed that they were attempting to Avoid law enforcement.

A... Yes.

- officer Hemmerly next testifyes -

A... After I exited the vehicle and approaching it I Smelled a Strong odor of marijuana Coming from that vehicle.

- next -

Q... when you approached the driver's Side vehicle what did you do.

A... I knocked on the window and I was attempting to Speak with the individuals inside the car.

Q... was there anyone around the vehicle at this time

A... Yes, officers foster was positioned on the Side walk, he was near the passenger Side.

- next -

Q... An when you knocked on the window, did the people inside respond

A... no they did not.

- next

Q... An Could you from the driver Side See what mr. Hawkins or mr. Beasley were doing inside.

A... The windows were pretty dark and it was dark outside, but I Could See that Someone was

P.g4

like laying across the back seat and the front
passenger was reclined back and ducking down.
Q... Did this behavior seem odd to you
A... yes
Q... why
A... Because it seemed like these individuals were trying
to hide from us, like I said marked police vehicle
high drug, high crime, it seem they were trying
to hide from us.
A... Officer foster told me the front passenger
was rolling on his stomach
Q... An what did you and other officers do at
this point
A. I observed officer foster open up the front
passenger door and order Avery Hawkins out of
the vehicle
Q And was mr. Beasley ordered out of the vehicle
as well
A... yes I observe officer fusca open up the
rear passenger door and told mr beasley to exit the
vehicle.


Petitioner would argue that officer hemmerly
testimony is contradicted as the facts of
the case are set it was 1:00 in the morning
Officer hemmerly clear states the vehicle has
dark tint the street is pretty dark, there's no
street lights   At trial officer Hemmerly gives a

pg 5

Similar account of facts but at trial
mr. Hemmerly does not give justifiable reason
to approach the vehicle in question.
- Trial Testimony explains that he saw the
occupants duck from the presence of the police car
`But on direct V-20 p.g'
officer hemmerly is giving details of the events
that occurred once he exited the vehicle.
*Q... How were you able to see? It was dark
xA.... The windows were tinted but theres you know
some light from the streets, you know Street lamps
and stuff like that, An I mean obvisously when
we were driving pass I could see the outline
of figures ducking down from the vehicle
xQ... So you were close enough that even with it
being dark and windows you could see shapes of
the individuals moving in the car.
xA... Yes, Sir

The problem with mr. hemmerly testimony is now officer
is stating he could see outline of figures ducking
down, that difference of being able to see clearly
to only being able to see figures, officer hemmerly
did not see anything that would warrant criminal
p.g 6   activity was afoot.

- Officer Abdi also testified to the Events of the
Arrest-

Officer ~~the~~ Abdi testified he was the driver
of the vehicle, As he was driving east on 35th street
he came upon a Sliver Acura with tinted windows
— Suppression hearing —
He believed officer hemmerly was first to
notice the vehicle.
A... And I looked over and I could kind of
See them looking back at us, An then all
of a Sudden they disappeared from our line
of Sight like out view inside the vehicle
like they were hiding from us.
Q... How close to that vehicle were you when
you observed this
A... less then 5 feet
Q... So you were driving by it would be fair to
Say
A... yes
Q. And you said they disappeared from the line of
Sight can you describe as best what exactly
you Saw
A... you could kind of See like the Shapes of
them and they were -- like their heads were
looking at us and they kind of like ducked
down Just disappeared.

pg 7

— Officer Abdi has testified that he was less

then 5 feet away from the vehicle in question
It was night time, through officer Abdi testimony
he is clearly having trouble seeing his omission
of "you could kind of see like the shapes of
them and that they were -- like their heads were
looking at us".

Officer Abdi is describing that this behavior
gave officers belief that the occupants were
involved in some type of criminal activity or in
the mist of it.
This hunch is based on a mere hunch officers
never gave testimony that they could see the
Eyes of the occupants or that eye contact was
made to insure the behavior was because of
law enforcement.
—Argument—
To comport with the fouth Amendment, even a
brief investigatory detention must be supported
at least by a reasonable and articulable suspicion
that the person seized is engaged in criminal
activity. Considering the totality of the circum-
stances, a court must determine whether there
was a sufficent objective, particularized basis
for suspecting the person seized of criminal
activity. Evidence that would support only

P.g 8

a mere hunch is insufficient.

Before an officer can stop and frisk a citizen
she must have "reasonable and articulable suspicion
that the person seized is Engaged in criminal
activity". Reid v. georgia, 448. U.S 438, 440
100, S.ct 2752, 65L. Ed 2d, 890 (1980).

Officer Abdi next testifys that the 3 officers
got out of the vehicle as he stayed in the
car to insure the occupants didn't get out
an run or take the car and pursue a chase
- on cross defense counsel asked -
Q... Sir you also parked your car next to
the car in question the Sliver Acura is that
Correct
A... yes sir
Q... An is that also in part so that the car cant
leave on you.
A... no it's just we kind of stopped like when we
saw it
Q... but in actuality here because of the way
you parked your car that sliver acura couldnt
have.
A... I can cofidentley say at this time I
wasnt worried about blocking the car so much

pig 9

Sir, as someone getting out of the vehicle and running that's why I stayed inside the car but I also stayed just in case they decide to you know hit one ~~one~~ of my officers but it wasn't to block the car.

"In order to determine whether a particular encounter constitutes a seizure a court must consider all circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers requests or otherwise terminate the encounter." Bostick, 501 U.S at 439.

A court considers a number of factors in determining whether an officers conduct convey to a reasonable person that he was not free to leave. These include but are not limited to, the number of police present during the encounter, whether they were in uniform or displayed their weapons whether they touched the defendant, whether they attempted to block his departure or restrain his movement, whether the officers questioning was non-threatening and whether they treated the defendant as though they

pg 10

Suspected him of Illegal activity rather than treating the encounter as routine in nature" gray 883, F.2d at 322-23.

Officer Abdi testimony is Contradicted with his trial testimony on direct officer Abdi Stated "He catacornered the Vehicle", then the 3 officers got out, his reason for doing So was to assure nobody got out and ran or Started the car and fleed, he Sat there for a min then exited as well once he Confirmed that the Vehicle was not going to leave.

Accordingly before the verbal encounter began this Case lacked a traditional hallmark of police-Citizen ConsenSual encounter, the Seemingly routine approach of the police officer.

This was not a routine encounter, but one targeted of criminal activity without Stronger indication of So particulary Significant given that officers blocked petitioner's car to effectuate the encounter.

p.g 11  This holding Comports with that of numerous Other Courts, considering Similar facts.

See e.g, United States v. See 574 F3d 309 313 (6th cir 2009), "given the fact that the officer blocked the defendant parked car with his marked police car, a reasonable person in his position would not feel free to leave". – (United States v. v. Kerr 817 F2d 1384, 1386-87, (9th cir 1987) reversing district court's holding that police blockage of defendant, who could have driven around the police car was not detention because officers arriving in uniform and marked police car unquestionably appeared to be acting in an official capacity and instead of waiting at the road side blocked defendants car thus percipitating the confrontation. See, Riley v. State 892 A.2d 370 374, (del 2006), concluding that when police officers approached defendant car with their badges and flashlights after having parked their vehicle, so to prevent defendant from driving away a seizure had taken place for the purpose of fourth amendment analysis. Mcchesney v. State 988 p.2d 1071, 1075 (wyo.1999) noting fact that officer "Blocked in" defendant car has been found sufficent to Constitute a Seizure.

pig 12   – futhermore –

Officers behavoir approach constituted as being detained and a reasonable person would not feel

free to leave, officers ~~are rushed and~~
Blocked in and overrushed occupants from
departure.

Based on the totality of the facts, the time of
night, a Street with no light, a legally parked
vehicle with tinted windows, And the officers
own languge of Seeing, ~~Shaundews~~ Shadows, Shapes
Silhouettes, and outline of figures, Officers
could not be 100% that the movement of the
occupants were to avoid law enforcement
collectively could not supported officers with the
appropiate Justification to comply with the 4th
amendment.

Whether a encounter has become a Seizure
depends on the officers objective behavior not any
Subjective Suspicion of criminal activity.


Officers mere hunch, and approach to force
an encounter, can not be Justified
officers never Seen any Suspicious Items
or contraband pass between the hands of the
passengers inside the vehicle, Through officers
own testimony they could hardly See at all
P.g 13  officer Show of authority to block the Sliver
acura from departure then Surround the vehicle and
Dont allow occupants to Ignore police officer

which is a equal right to protect the
Questioner, officers opened the door and
order occupants out. All Constituted a illegal
Seizure before officers had any Justification
for doing So which was a fourth amendment
Violation.

"While Such a ~~deate~~ detention does not require
Probable cause it does require Something more
than an inchoate and particularized Suspions or
hunch." United States v. Sprinkle, 106 F.3d, 613
617 (4th cir 1997) Quoting terry 392 U.S at 27.

"In ~~foster~~ United States v. foster the fourth
Circuit Cautions against assuming that a long
list of innocent activities turn the whole
Package into a reasonable Suspicion to Stop
Some one. United States v. foster 634 F.3d 243
249 (4th cir 2011)

Based on the facts, officers Seized petitioner
before they had any Justification for doing
So which was a fourth amendment violation
wos "Ted States of america v. frederick A Jones
678 F.3d 293 (4th cir 2012)

pig 14

## Iac of Appeal Attorney Cummalatively Prejudiced petitioner (ground 8)

Appeal counsel, Performance fell below a Standard of reasonableness. Counsel failed to file a notice of appeal, once petitioner direct appeal Stage was decied. petitioner requested that Counsel file a notice of Appeal being that of rehearing en banc. prior to this Counsel has Shown a list of unreliabe ~~instanceas~~ instances that have prejudice petitioner.

Attached, Are Corrosponeds between petitioner and mr. marc B. Hall

Exhibit's 1-4, Supports petitioner claim that Counsel prejudically failed to file notice of Appeal, thut was requested by petitioner.

Exhibit 1

On Aug. 25, 2020, petitioner received a Email from mr. marc g. hall that the fourth Circuit of appeals has affirmed the Convictions and Sentence. Mr. Hall then went on to ask what petitioner wish done at this point. note mr hall informed petitioner the fourth Circuit decision 6 days late, decision Aug 19, 2020

Pg 1

## Aug 26, 2020 - Exhibit 2

petitioner explains to mr. hall that he will
Continue to fight, petitioner asks mr.
Hall to Send the goverment response
to his brief which petitioner never
received. petitioner also informed mr.
hall that on Aug 31, 2020 he will inform
mr. hall what he wished done at this time.

## Aug 28, 2020   Exhibit 3

petitioner requested mr. hall that he wish to
have a rehearing En baoe. that Re Email
Went Unanswered.

## Aug 31, 2020 - Exhibit 4

Petitioner requested Again that he Wish to
have a re-hearing En banc. that also
went unanswered.

p.g 2
These's request were made in the time
frame of petitioner's 14 days to file
a notice of appeal. petitioner Went on and
Sent a brief to Support his reason's to
file a rehearing En banc. The fourth Circuit
denied petitioner's motion for untimely
petitioner wrote a letter to the fourth

Circuit for reconsideration, petitioner attached Emails to mr. hall where he requested two times for counsel to file a notice of appeal. because of this the fouth Circuit reconsidered there decision base off this information and sent a mandate which counsel never sent petitioner mr. hall prejudiced petitioner rights which petitioner rights to file to the Supreme court was also denied petitioner has only completed the 9th grade, never been to the federal district court until this time of arrest, so the stages of rights are unfamiliar to petitioner.

Prior to this incompetence of counsel, his actions have been unreliable. Attached also are contacts between mr. hall and petitioner. Counsel Cummalatively have affected and prejudiced new petitioner.

Pg 3   Page-1 starts on 9-9-2019
Petitioner asks mr. Hall did he received trial transcript.
9-24-2019
Mr. Hall informes petitioner that he has received

trial transcript and he will begun to read them
9-24-2019

Petitioner responeds asking to receive a copie
of transcript as soon as possible.
10-22-2019

Mr. hall, informes petitioner of the Issues
he see's and will look a 2nd time, to see if
others needed to be added.
10-22-2019 # page 2

petitioner respondes requesting a copy of
transcript
-Top of page 2- 10-25-2019

mr. Hall, informes petitioner trial transcript
are being sent to the warden
10-31-2019 - page 3

petitioner, informes counsel that he has spoken
to the warden and his unit manger which both
stated that transcripts could be sent to
inmates directly and that they did not receive
anything.

pig 4     11-4-2019  pg3

mr. hall informes that the package of transcript
has been refused by the mail room and he
will try to resolve the conflict with the court
rules and the prison rules.

11-4-2019   Pg 3

Petitioner asks when is the brief due

11-5-2019   Pg 3

mr. hall, respondes  Nov. 26th

11-6-2019   P.g 3

petitioner, asks when will he receive the trial
transcript, and that he would like another ext
to have time to review them.

11-6-2019   P.g 3

mr. hall, respondes that transcript will arrive
Saturday and he will request another ext.

11-13-2019   Pg 3

petitioner, Emails a list of pages missing
from the trial transcript which include Opening
and Closing Statements, petitioner also
informes mr. hall that there are Important
Issues that he would like added because if
they are not added now, later on they will
not be able to be added.

7-15-2020  page 4

pg 5

petitioner, asks mr. hall has there been an
update in the proceeding s, and has the goverment
responded to his brief.

7-27-2020  p.g 4

mr. Hall States he will send the goverment respones
and that there no update.

7-28-2020 pg 5
Petitioner, tells mr. hall thank you and to be
Careful in the pandemic.

8-12-2020 pg 6
Petitioner, asks for a copie of Jury instructions
When he Sends the goverment respondes.

8-25-2020 pg 7
Mr. Hall, informes the petitioner that the fourth
Circuit of appeals affirmed his Conviction and
Sentence.

9-26-2020 pages - 8-10
are explain above these are Exhibit 2-4


Mr. Hall has denied petitioner the right to
Effective assistance of Counsel, through mr.
Hall's actions of failing to file a notice of appeal
Mr. hall did not send missing transcripts, he
did not Send the goverments respondes to petitioner
brief of direct appeal, Which without petitioner
Can Only prematurely put this motion under
28 U.S.C 2255 together.
I would like to also note mr. Hall did not
respond a Second time to the brief done by
the goverment. These documents can not be
put on the goverment to which petitioner never
received. Due to Counsel's failures,

pg 6

Cummalatively counsel has deprived petitioner rights.

— Notice —

I would like the court to know at this time of this claim the Jail is on ~~modified~~ 24 hour lock down due to an outbreak, inmates are only able to take a Shower mon. weas. fri Phone calls, emails, and a law library and not usable.

I pray this court take notice of the Stress of not being able to put this motion together Correctly because of the pandemic, and Counsels failed action.

pg 7

" Illegal   Sentence "

( ground 9 )

Evidence presented at trial was insufficent to
Support the district courts finding at Sentencing
that petitioner commited the murder of Tyrone Severence
As well as for the fact the goverment did not attempt
to prove that petitioner commited the murder of
mr. Severence or the attempted murders of
mr. preston or ms. featherstone, Yet the Sentenced
Imposed were both predicated and based upon Same.
Another compelling factor is that the petitioner
was not convicted of discharging nor the Use
of a firearm as it relates to the instant matters
offense, Yet there is an underlying application of
a cross reference of 2A1.1 applied by the Court
which in turn gave the petitioner a base offense level
of 43 on all listed counts which calculated with
those for the Same Substantially increased petitioner
Sentence and directly violated his 5th and 6th amendment
rights. See, McMillian v. pennsylvania, 477 U.S 79, 106
S.ct 2411 (1986)

Pg1

The goverment never met their burden for the
underlying activity for first degree murder as the
required elements of the Statute were not met.

In fact for the court to allow the goverment
to remove the that elements to Satify first degree

murder and attempted first degree murder
and not allow petitioner a fair trial
was prejudicial.
The court allowed the goverment to present
to the Jury conspiracy to murder theory
and get a second bite at the apple
at sentencing to in fact ask the court to find
petitioner did in fact kill mr. Severence and did
in fact shoot mr. preston and ms. featherstone.

The goverment in open statement, informed the
Jury "This is not a murder trial"!

following the reasoning of the findings in
Molina-Martinez v. United States, 136 S.ct 1338 (2016)
applying Fed. R. crim. P. 52(b) when a defendant
is sentence under an incorrect guideline range, showing
prejudice beyond the fact that erroneous and higher
sentence range the error itself could and most often would
be sufficient to show reasonable probabilty of a
different outcome absent the error.

The problem in this case begins with the verdict form
p.g 2   itself. Under the general verdict of Racketeering
conspiracy, the Jury was required to make
findings as to whether the racketeering activity
involved 1st degree murder 2nd degree murder as well
as other Violent acts. The verdict form does

not require the Jury to tell us which violent acts
were reasonably forseeable to the petitioner.
The Sentence in petitioner case was procedurally
unreasonable because the trial court based it's
guideline on this lack of specific information.

The court Errors in finding petitioner did in fact
kill mr. Severence.
The court findings from a video of the shooting
mins before mr. Severence is killed is a person with
a hood an some type of face covering  the court
~~was~~ biasally stated petitioner "matched the same
size built and the same complexion" which neither
is Seeable.
no forensic evidence was presented, no eye witnesses
were called to the stand, nor were any of the
primary investigators to either of the shooting
called to the stand.
The District court based United States Sentencing guideline
on the uncharged murder and attempted murder
without putting their theory to the test before the Jury
or requiring the Jury to state what facts they were
basing their decision on. Because the Jury found murder
as a Racketeering activity the court made a erroneous
finding that the mr. Severence murder was actually
committed by petitioner and base guidelines on that
murder. ~~Therefore~~
Therefore the Sentencing was both Substantively and

Pg 3

Procedurally deficient.

Furvermore-

The now and ever changing landscape of the legal System and the laws applying to Same, rico conspiracy no longer constitute a COV, the indictment Included both drug crimes as well as alleged violent offenses, which under davis and So many other ~~crimes~~ Cases in the wake of the verdict that deals with 924(C) Cases where the term "in aid of racketeering" language from "violent crimes in aid of racketeering act" or vicar suggesting a connection between the conduct U.S v. davis, 135 S.ct 2551, the crimes charged does not meet the required elements to Satisfy the findings by the U.S Supreme court in apprendi and because of this fact the Statutory maximum Sentenced allowed is 20 years an not that of life which is now illegally Imposed upon petitioner as asserted by the aforemention authorities Cited herein. The findings being a direct result of that of Johnson, Dimaya, and davis as well as numerous other legal precedence that goes to the heart of this matter and the Sentence Imposed.

P.g 4

## Conclusion

For the foregoing reasons, movant requests that the court grant this motion for habeas corpus, and movant also asks this Court to excuse the typo errors because not only am I a layman at law, I'm also not an typist nor a clerical Expert.

Wherefore, movant pray that this Honorable Court grant him relief. Under 28 U.S.C. § 2255 to vacate, Set aside, or correct conviction and Sentence.

Respectfully
Submitted,

*Trevon Beasley*

Trevon R. Beasley
pro Se,
Reg. no. 63040-037
USP Mccreary
P.o Box 3000
Pine Knot, Ky 42635

TAKe "JuDicial notice"

Pursuant To Fed. R. Evid. 201(a)

Petitioner, request that this honorable Court
"Take Judicial notice" to the incorrect
guidline range, as well as the fact the
Petitioner filed this petition without any
legal help or the briefs Submitted by
my attorney in response to the goverment's
brief which, I also never received and
Same is being done prematurely and
from the order issued by this court as well
as petitioners limitied memory of the order
proceedings and Transcripts / brief initial
appeal brief that I was given by attorney of
record. not withstanding the fact that due to
the current pandemic my resources to the
law library are limited as the institution is
on modified Schedule which permits a 2 hour
window for prisoners to Shower, call home
research legal work as well as email and
try to do other Imporatant things. So in that
I Vein I Submit the most effective
request possiable.

Respectfully Trevon Beasley

Trevon R. Beasley

Reg no. 63040-037

U.S.P mccreary

p.o box 3,000, pine knot ky 42635

filed under title
(28 U.S.C. 1746)

# Certificate of Service

I, Trevon R. Beasley, do hereby certify that I served **a copy** of this motion to Vacate, Set aside or Correct Sentence and Conviction pursuant to 28 U.S.C 2255 by the way of U.S. Postal Service, Prepaid first class postage by placing a copy of instant petition in the institutional legal mail system here at USP mccreary on 8-11-2021 to be delivered to the clerk of the court for The District Court of maryland at Baltimore located at 101 W. lombard Street, Baltimore md 21201, with the request that a copy of Same be forwarded to all parties of record via the court's Ecf System.

I attest that aforemention is true and accurate and Subject to penalty of perjury and title 28. U.S.C 1746.

Respectfully

Trevon Beasley

63040-031

USP mccreary

P.o box 3000

pine knot Ky 42635.